IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JULIAN VALENZUELA,

    Plaintiff,

vs.                                                                                                                                                 No. CIV 24-0136 JB/JFR

ALBUQUERQUE POLICE DEPARTMENT, and
FIRE/RESCUE DEPARTMENT,

    Defendants.

## MEMORANDUM OPINION AND ORDER

       **THIS MATTER** comes before the Court following Plaintiff Julian Valenzuela's failure to amend his pleading as directed. Valenzuela was incarcerated when this case was filed and is proceeding pro se. See Complaint to Recover Damages for Injury at 1, filed December 12, 2023 (Doc. 1-2)("Original Complaint"). The Court previously dismissed Valenzuela's Original Complaint for failure to state a claim upon which relief may be granted, but granted Valenzuela leave to amend. See Memorandum Opinion and Order at 1, filed September 27, 2024 (Doc. 9)("Screening MOO"). Because Valenzuela has not filed an amended complaint, the Court dismisses this action, remands the remaining State law claims to the County of Bernalillo, Second Judicial District Court, State of New Mexico, and closes the case.

## FACTUAL AND PROCEDURAL BACKGROUND

       Valenzuela filed the Original Complaint while incarcerated at the Metropolitan Detention Center ("MDC") in Albuquerque, New Mexico. See Original Complaint at 1. The Original Complaint alleges Valenzuela called the 911-emergency dispatch number in Albuquerque following the assault of his fiancé, Janeth Valenzuela. See Original Complaint at 2. The Albuquerque Police Department ("APD") and the Albuquerque Fire/Rescue Department ("Fire

Department") initially responded to the call. See Original Complaint at 2. The Original Complaint alleges that two APD officers prematurely dismissed the ambulance and the Fire Department personnel. See Original Complaint at 2. Other APD officers allegedly arrived shortly thereafter and called the Fire Department back. See Original Complaint at 2. A Fire Department employee allegedly stated to APD Officer Cadena: "We did revive [Janeth Valenzuela], but you tell [sic] us to let her die." Original Complaint at 2. The Original Complaint alleges that APD Officer Cadena responded: "hush stupid [] … [Plaintiff Valenzuela] is in my [police] car." Original Complaint at 2. APD Officer Cadena also allegedly stated: "[T]his was a Texas mob hit," but it is not clear from the Original Complaint why anyone believed the mob was involved. Original Complaint at 2. The Original Complaint alleges Janeth Valenzuela died as a result of her injuries. See Original Complaint at 2.

Valenzuela contends that APD and the Fire Department conspired to cause the death of Janeth Valenzuela. See Original Complaint at 4. As evidence of the conspiracy, Julian Valenzuela alleges that he offered to give a statement to Cadena and noted that he had "solid facts." Original Complaint at 4. Cadena allegedly refused to take Valenzuela's statement, telling him: "[N]o, I can talk to police detectives." Original Complaint at 4. An unnamed detective thereafter allegedly stated or wrote: "[Julian Valenzuela] did not wish to speak with police detectives." See Original Complaint at 4. Julian Valenzuela also contends that APD officers and the Fire Department "plotted to get [him] this [unspecified criminal] charge" as part of the conspiracy. Original Complaint at 6.

The State court docket, which is subject to judicial notice, reflects that the State of New Mexico charged Julian Valenzuela with the second-degree murder of Janeth Valenzuela. See

State of New Mexico v. Julian Ontiveros Valenzuela, Case No. D-202-CR-2023-00595, County of Bernalillo, Second Judicial District Court, State of New Mexico, Grand Jury Indictment (filed March 6, 2023); United States v. Ahidley, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007)(stating that courts have "discretion to take judicial notice of publicly-filed records. . . and certain other courts concerning matters that bear directly upon the disposition of the case at hand"); Mitchell v. Dowling, 672 Fed. App'x 792, 794 (10th Cir. 2016)(stating that courts may take "judicial notice of the state-court docket sheet");[1] Van Duzer v. Simms, No. CV 18-0405 JB/LF, 2018 WL 2138652, at *1, n.1 (D.N.M. May 9, 2018)(stating that courts may take judicial notice of New Mexico State criminal dockets)(Browning, J.).  The State court docket further reflects that Julian Valenzuela pled guilty to second-degree murder and tampering with evidence in that case, and the State judge sentenced Julian Valenzuela to twenty-two years imprisonment, with four years suspended.  See State of New Mexico v. Julian Ontiveros Valenzuela, Case No. D-202-CR-2023-00595, County of Bernalillo, Second Judicial District Court, State of New Mexico, Judgment and

---

[1] Mitchell v. Dowling is an unpublished opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit states:

> In this circuit, unpublished orders are not binding precedent, . . . And we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that Mitchell v. Dowling, Novotny v. OSL Retail Servs. Corp., 2023 WL 3914017 (10th Cir. June 9, 2023)(unpublished), and Hinton v. Dennis, 362 Fed. App'x 904 (10th Cir. 2010) have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

Partially Suspended Sentence (filed July 23, 2024).

Julian Valenzuela's Original Complaint raises federal claims for violations of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, and the First Amendment to the Constitution of the United States. See Original Complaint at 4-6. Julian Valenzuela appears to allege APD violated his First Amendment right to free speech by not taking a statement regarding Janeth Valenzuela's murder, and that APD and the Fire Department violated Janeth Valenzuela's Equal Protection rights by allowing her to die. See Original Complaint at 4-6. The Original Complaint also raises claims under New Mexico law for conspiracy, entrapment, negligence, and wrongful death. See Original Complaint at 6. The Original Complaint seeks at least two million dollars in damages from two Defendants: (i) APD; and (ii) the Fire Department. See Original Complaint at 1, 7.

Julian Valenzuela originally filed the Original Complaint in the County of Bernalillo, Second Judicial District Court, State of New Mexico. See Original Complaint at 1. On February 9, 2024, APD removed the case to federal court based on federal question jurisdiction. See Notice of Removal, filed February 9, 2024 (Doc. 1). On February 14, 2024, APD filed a Motion to Dismiss Valenzuela's Complaint with Prejudice arguing, among other things, that a police department is not a suable entity. See Motion to Dismiss Valenzuela's Complaint with Prejudice, filed February 14, 2024 (Doc. 5)("Motion to Dismiss").

The Court issued the Screening MOO on September 27, 2024, which grants the Motion to Dismiss in part and holds that the Original Complaint: (i) fails to name a person subject to suit under 42 U.S.C. § 1983; and (ii) fails to allege facts establishing municipal liability. See Screening MOO at 10-11. The Screening MOO defers consideration of the merits of the State

<—

Partially Suspended Sentence (filed July 23, 2024).

Julian Valenzuela's Original Complaint raises federal claims for violations of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, and the First Amendment to the Constitution of the United States. See Original Complaint at 4-6. Julian Valenzuela appears to allege APD violated his First Amendment right to free speech by not taking a statement regarding Janeth Valenzuela's murder, and that APD and the Fire Department violated Janeth Valenzuela's Equal Protection rights by allowing her to die. See Original Complaint at 4-6. The Original Complaint also raises claims under New Mexico law for conspiracy, entrapment, negligence, and wrongful death. See Original Complaint at 6. The Original Complaint seeks at least two million dollars in damages from two Defendants: (i) APD; and (ii) the Fire Department. See Original Complaint at 1, 7.

Julian Valenzuela originally filed the Original Complaint in the County of Bernalillo, Second Judicial District Court, State of New Mexico. See Original Complaint at 1. On February 9, 2024, APD removed the case to federal court based on federal question jurisdiction. See Notice of Removal, filed February 9, 2024 (Doc. 1). On February 14, 2024, APD filed a Motion to Dismiss Valenzuela's Complaint with Prejudice arguing, among other things, that a police department is not a suable entity. See Motion to Dismiss Valenzuela's Complaint with Prejudice, filed February 14, 2024 (Doc. 5)("Motion to Dismiss").

The Court issued the Screening MOO on September 27, 2024, which grants the Motion to Dismiss in part and holds that the Original Complaint: (i) fails to name a person subject to suit under 42 U.S.C. § 1983; and (ii) fails to allege facts establishing municipal liability. See Screening MOO at 10-11. The Screening MOO defers consideration of the merits of the State

law claims until after evaluating any amended federal claims.  See Screening MOO at 10; Brooks v. Gaenzle, 614 F.3d 1213, 1229-30 (10th Cir. 2010)(holding that federal courts generally should decline to exercise supplemental jurisdiction over a State law claim if no viable federal claims remain).  The Screening MOO also explains that, if Julian Valenzuela wishes to challenge the validity of his State convictions, he should file a 28 U.S.C. § 2254 habeas petition.  See Sacoman v. Santistevan, 2024 WL 2973707, at *1 (10th Cir. June 13, 2024)("Section 2254 is the proper vehicle to challenge the validity of a state conviction and sentence")(citing Montez v. McKinna, 208 F.3d 862, 865 (10th Cir. 2000)).

Consistent with Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991), and Valenzuela's pro se status, the Court invited Julian Valenzuela to file an amended civil complaint.  See Screening MOO at 12-13.  The deadline to amend expired no later than October 28, 2024.  See Screening MOO at 13.  The Screening MOO warns that if Julian Valenzuela does not amend timely his Original Complaint, the Court may dismiss all federal § 1983 claims with or without prejudice; decline to exercise supplemental jurisdiction over any State law claims; and dismiss all State law claims without prejudice for lack of jurisdiction.  Julian Valenzuela did not amend his Original Complaint by the October 28, 2024, deadline and otherwise has not responded to the Screening MOO, which was returned as undeliverable.  See Returned Mailing Envelope, entered October 28, 2024 (Doc. 10).  Julian Valenzuela has not updated his address following his release from MDC, as D.N.M. Local Civil Rule 83.6 requires.  See D.N.M. Local Civil Rule 83.6 ("All . . . parties appearing pro se have a continuing duty to notify the Clerk, in writing, of any change in their . . . mailing addresses.").  The Court, therefore, will summarize the reasons for dismissing the Original Complaint, for dismissing the federal claims without prejudice, and for

remanding the sole remaining State law claims to New Mexico State court.

## LAW REGARDING INITIAL REVIEW OF PRISONER COMPLAINTS

Section 1915(e) of Title 28 of the United States Code requires the court to conduct a sua sponte review of all civil complaints where the plaintiff is proceeding in forma pauperis. See 28 U.S.C. § 1915(e). The court must dismiss any in forma pauperis complaint that is frivolous, malicious, or fails to state a claim on which relief may be granted for purposes of rule 12(b)(6) of the Federal Rules of Civil Procedure. See 28 U.S.C. § 1915(e). Rule 12(b)(6) tests the "sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994)(citing Williams v. Meese, 926 F.2d 994, 997 (10th Cir. 1991)). A complaint's sufficiency is a question of law, and, when reviewing the complaint, a court must accept as true all of a complaint's well-pled factual allegations, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006).

A complaint need not set forth detailed factual allegations, but "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action'" is insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Bell Atl. Corp. v. Twombly, 550 U.S. at 545.

To survive rule 12(b)(6) review, a plaintiff's complaint must contain sufficient "facts that,

if assumed to be true, state a claim to relief that is plausible on its face." Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010)(citing Ashcroft v. Iqbal, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis in original). The Tenth Circuit states:

> Rather, "plausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." [Bell Atl. Corp. v. Twombly, 550 U.S. at 570]. The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008).

In conducting the initial review, a pro se prisoner's pleadings "are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." Hall v. Bellmon, 935 F.2d at 1110. If the court can "reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, . . . confusion of various legal theories, . . . poor syntax and sentence construction, or . . . unfamiliarity with pleading requirements." Hall v. Bellmon, 935 F.2d at 1110. At the same time, however, pro parties must file a legible pleading that complies with rule 8 of the Federal Rules of Civil Procedure. That rule requires: "(1) a short and plain statement of the grounds for

the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought[.]"  Fed. R. Civ. P. 8(a).

## LAW REGARDING 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.  Section 1983 creates only the right of action.  It does not create any substantive rights, which must come from the Constitution or from a federal statute.  See Ellis v. Univ. of Kan. Med. Ctr., 163 F.3d 1186, 1197 (10th Cir. 1999)(holding that Section 1983 "did not create any substantive rights" but merely enforces "existing constitutional and federal statutory rights").  Section 1983 authorizes an injured person to assert a claim for relief against a person who, acting under color of State law, violated the claimant's federally protected rights.  To state a valid claim under § 1983, a plaintiff must allege: (i) a deprivation of a federal right; and (ii) that the person who deprived the plaintiff of that right acted under color of State law.  See West v. Atkins, 487 U.S. 42, 48 (1988).  The Court has noted:

> [A] plaintiff must establish (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a "person" (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia.

Schaefer v. Las Cruces Public Sch. Dist., 716 F. Supp. 2d 1052, 1063 (D.N.M. 2010)(Browning, J.)(quoting Summum v. City of Ogden, 297 F.3d 995, 1000 (10th Cir. 2002)).

The Supreme Court of the United States clarifies that, in alleging a § 1983 action against a

government agent in his or her individual capacity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Consequently, there is no respondeat superior liability under § 1983. See Ashcroft v. Iqbal, 556 U.S. at 675; Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997). Entities cannot be held liable solely on the existence of an employer-employee relationship with an alleged tortfeasor. See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 689 (1978). Supervisors can be held liable only for their own unconstitutional or illegal policies, and not for their employees' tortious acts. See Barney v. Pulsipher, 143 F.3d 1299, 1307-08 (10th Cir. 1998).

The United States Court of Appeals for the Tenth Circuit recognizes that non-supervisory defendants are liable if their conduct deprived the plaintiff of his or her constitutional rights and "there were no unforeseeable intervening acts superseding their liability." See Martinez v. Carson, 697 F.3d 1252, 1255 (10th Cir. 2012)(quoting Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006)). The Tenth Circuit also recognizes that Ashcroft v. Iqbal limits, but does not eliminate, supervisory liability for government officials based on an employee's or subordinate's constitutional violations. See Garcia v. Casuas, No. CIV 11-0011 JB/RHS 2011, WL 7444745, at *25-26 (D.N.M. Dec. 8, 2011)(Browning, J.)(citing Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010)). The language that may have altered the landscape for supervisory liability in Ashcroft v. Iqbal is: "Because vicarious liability is inapplicable to Bivens[2] and § 1983 suits, a

---

[2]In Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971)("Bivens"), the Supreme Court recognized that citizens may obtain money damages for injuries suffered as a result of federal agents' violation of the Fourth Amendment. See 403 U.S. at 395-397. "In Bivens -- proceeding on the theory that a right suggests a remedy -- this Court 'recognized for the first time an implied private action for damages against federal officers alleged

plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. at 676. The Tenth Circuit in Dodds v. Richardson states:

> Whatever else can be said about Iqbal, and certainly much can be said, we conclude the following basis of § 1983 liability survived it and ultimately resolves this case: § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who

---

to have violated a citizen's constitutional rights.'" Ashcroft v. Iqbal, 556 U.S. at 675 (quoting Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 66 (2001)). See Copar Pumice Co., Inc. v. Morris, No. CIV 07-0079 JB/ACT, 2009 WL 5201799, at *13 (D.N.M., Oct. 23, 2009)(Browning, J.) )(noting that, in Bivens, the Supreme Court held that, "'where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done.' 403 U.S. at 396–397."), aff'd 639 F.3d 1025 (10th Cir. 2011.

Bivens suits are "the 'federal analog' to suits brought against state officials under [42 U.S.C.§ 1983]." Ashcroft v. Iqbal, 556 U.S. at 675-76. Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Unlike suits under § 1983, Bivens actions do not allow plaintiffs to seek equitable relief; they may seek only damages. See Bivens, 403 U.S. at 410 (Harlan, J., concurring)("For people in Bivens' shoes, it is damages or nothing."). Additionally, a Bivens suit is not available for every alleged constitutional violation that a federal actor commits. The Supreme Court has explained that, where Congress "provides an alternative remedy," which Congress intends "by statutory language, by clear legislative history, or perhaps even by the statutory remedy itself" to preclude a remedy in federal court, a federal court should decline to exercise jurisdiction over the matter under Bivens. Bush v. Lucas, 462 U.S. 367, 378 (1983). A federal court should also decline to exercise jurisdiction under Bivens when "special factors counseling hesitation," Bivens, 403 U.S. at 396, are present, such as: (i) questions related to federal fiscal policy, United States v. Standard Oil, Co., 332 U.S. 301, 311 (1947); (ii) the "unique disciplinary structure of the military establishment" that a suit seeking damages for the alleged violations of superior officers impacts, Chappel v. Wallace, 462 U.S. 296, 304 (1983); and (iii) that a case "arise[s] out of or are in the course of activity incident to service" in the military, United States v. Stanley, 483 U.S. 669, 684-85 (1987).

>   creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights . . . secured by the Constitution[]"

614 F.3d at 1199 (quoting 42 U.S.C. § 1983). The Tenth Circuit notes, however, that "Iqbal may very well have abrogated § 1983 supervisory liability as we previously understood it in this circuit in ways we do not need to address to resolve this case." Dodds v. Richardson, 614 F.3d at 1200. It concludes that Ashcroft v. Iqbal does not alter "the Supreme Court's previously enunciated§ 1983 causation and personal involvement analysis." Dodds v. Richardson, 614 F.3d at 1200. More specifically, the Tenth Circuit recognized that there must be "an 'affirmative' link . . . between the unconstitutional acts by their subordinates and their 'adoption of any plan or policy . . . -- express or otherwise -- showing their authorization or approval of such misconduct." Dodds v. Richardson, 614 F.3d at 1200-01.

The specific example that the Tenth Circuit uses to illustrate this principle is Rizzo v. Goode, 423 U.S. 362 (1976), where the plaintiff seeks to hold a mayor, a police commissioner, and other city officials liable under § 1983 for constitutional violations that unnamed individual police officers commit. See Dodds v. Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at 371). The Tenth Circuit notes that the Supreme Court in that case finds a sufficient link between the police misconduct and the city officials' conduct, because there is a deliberate plan by some of the named defendants to "crush the nascent labor organizations." Dodds v. Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at 371).

## ANALYSIS

Construed liberally, the Original Complaint alleges APD and the Fire Department violate 42 U.S.C. § 1983. See Original Complaint at 4-6. As the Screening MOO notes, "governmental

sub-units are not separate suable entities that may be sued under § 1983." Hinton v. Dennis, 362 Fed. App'x 904, 907 (10th Cir. 2010)(citing Martinez v. Winner, 771 F.2d 424, 444 (10th Cir. 1985)(dismissing the City of Denver Police Department because it is not a separate suable entity from the City and County of Denver)); Ketchum v. Albuquerque Police Dep't, 958 F.2d 381 (10th Cir. 1992)(holding that police departments such as "APD are not suable entities under § 1983, because they lack legal identities apart from the municipality"); Young v. City of Albuquerque, 77 F. Supp. 3d 1154, 1161 (D.N.M. 2014)(Browning, J.)(granting APD's motion to dismiss the plaintiff's claims, because APD "is not a suable entity").

Alternatively, the Screening MOO explains that even if the Court construes the Original Complaint to raise claims against the proper Defendant -- the City of Albuquerque -- the allegations do not demonstrate municipal liability. Local governmental entities may not be held liable under § 1983 for the actions of its employees based on the doctrine of respondeat superior. See Cannon v. City and County of Denver, 998 F.2d 867, 877 (10th Cir. 1993). See also Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 694 (1978)(establishing "Monell liability"). To establish liability of local government entities under § 1983, "a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged." Jenkins v. Wood, 81 F.3d 988, 993-94 (10th Cir. 1996). The Screening MOO explains that the Original Complaint does not allege that the City of Albuquerque promogulated a policy or custom that caused any constitutional violation. See Screening MOO at 11-12. There are also no facts that demonstrate a link between municipal action, and the alleged conduct of the APD and Fire Department officers who responded on the night of Janeth Valenzuela's murder. See Screening MOO at 11-12.

For these reasons, the Screening MOO dismisses the Original Complaint for failure to state a cognizable claim under rule 12(b)(6) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1915A.  The Screening MOO grants leave to amend -- based on Valenzuela's pro se status -- but Julian Valenzuela has not amended or shown cause for such failure.  Ordinarily, courts dismiss the federal claims with prejudice where the prior complaint does not state a cognizable claim, and the plaintiff fails to amend as directed.  See, e.g., Novotny v. OSL Retail Servs. Corp., 2023 WL 3914017, at *1 (10th Cir. June 9, 2023)(unpublished)(affirming dismissal with prejudice where the district court rejected a "claim but gave [the plaintiff] leave to amend, cautioning that failure to allege a plausible claim would result in a dismissal.").  Because Julian Valenzuela severed contact following his release from MDC, however, it is unclear whether he made an effort to obtain a copy of the Screening MOO.  The Court, therefore, dismisses all federal claims in the Original Complaint without prejudice for failure to state a cognizable claim under rule 12(b)(6) and 28 U.S.C. § 1915A.  Because no federal claims remain, the Court also declines to exercise supplemental jurisdiction over the State law claims in the Original Complaint and dismisses such claims without prejudice.  See Brooks v. Gaenzle, 614 F.3d 1213, 1229-30 (10th Cir. 2010)(holding that federal courts generally should decline to exercise supplemental jurisdiction over a State law claim if no viable federal claims remain).  The Court remands the sole remaining State law claims to the County of Bernalillo, Second Judicial District Court, State of New Mexico.  Furthermore, this dismissal ruling applies only to civil claims; it has no impact on Julian Valenzuela's ability to file a separate 28 U.S.C. § 2254 habeas petition challenging the validity of his State conviction.

**IT IS ORDERED** that: (i) all claims in Plaintiff Julian Valenzuela's original Complaint to

Recover Damages for Injury, filed December 12, 2023 (Doc. 1-2), are dismissed without prejudice; (ii) this case and its only remaining State law claims are remanded to the County of Bernalillo, Second Judicial District Court, State of New Mexico; and (iii) the Court will enter a separate Final Judgment closing the civil case.

_____
UNITED STATES DISTRICT JUDGE

*Parties:*

Julian Valenzuela
Albuquerque, New Mexico

    *Plaintiff pro se*

Lauren Keefe
   City Attorney
Ashlee M. Wright
   Assistant City Attorney
City of Albuquerque
Albuquerque, New Mexico

    *Attorneys for the Defendants*